IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IRVIN B. BALDWIN,

    Plaintiff,

v.                                                                              Civil Action No. **3:12CV210**

**ROSE WHITE**, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Irvin B. Baldwin, a Virginia prisoner proceeding *pro se*, filed this 42 U.S.C. § 1983[1] action in which he alleges Defendants[2] violated his rights under the Eighth Amendment.[3] Baldwin alleges that during his incarceration in Deerfield Correctional Center ("DCC") Defendants failed to ensure that he received adequate medical care for his skin rash. The action proceeds on Baldwin's Second Particularized Complaint. (ECF No. 5 ("Complaint.")) The matter is before the Court on Defendants' Motions for Summary Judgment. Defendants

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Defendants are: Rose White, R.N. at Deerfield Correctional Center ("DCC"); Dr. Edward Boakye; Bonnie Badgett, Head Nurse at DCC; Teresa Harvey, a Secretary with the Virginia Department of Corrections ("VDOC") Health Services Unit; and, Harvey Stephens, who according to Baldwin was "the chief physician of and employed by the [VDOC]." (Compl. ¶ 5.)

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

provided Baldwin with the appropriate *Roseboro*[4] notice for their Motions for Summary Judgment. (ECF Nos. 11, 22.) The matter is ripe for disposition.

## I. SUMMARY OF EIGHTH AMENDMENT CLAIMS

In his unsworn Complaint, Baldwin argues entitlement to relief based upon the following Eighth Amendment claims:

| | |
|---|---|
| Claim One | Defendants White, Boakye, Harvey, and Stephens acted with deliberate indifference to Baldwin's serious medical needs by denying Baldwin timely access to a specialist. (Compl. ¶ 38.) |
| Claim Two | Defendants White Boakye and Badgett violated Baldwin's Eighth Amendment rights "by simply documenting [Baldwin's] worsening conditions while prescribing ineffective medications." (*Id.* ¶ 40.) |
| Claim Three | Defendants White and Badgett violated Baldwin's Eighth Amendment rights by "refusing to carry out or implement specific instructions of Dr. Boakye . . . to refer [Baldwin] to a dermatologist and have clothes and linens laundered in liquid detergent."[5] (*Id.* ¶ 41.) |
| Claim Four | Defendant White violated Baldwin's Eighth Amendment rights by doing "nothing to counter the unit managers' insistence that [Baldwin] shower in hot water" although she knew of "the order of Dr. Musgrave to have [Baldwin] avoid hot showers." (*Id.* ¶ 42.) |
| Claim Five | Defendants White and Badgett violated Baldwin's Eighth Amendment rights by making "no effort to carry out the specific orders and to provide the specific prescriptions of the dermatologist. . . . [or] to administer medications in accord with those orders." (*Id.* ¶ 44.) |

Baldwin seeks monetary damages.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[4] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

[5] The Court corrects the capitalization, spelling and punctuation in quotations from Baldwin's submissions.

2

R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed.'" *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . ."). In support of their Motion for Summary Judgment, Defendants White and Boakye submit: (1) their own

affidavits (Mem. Supp. Mot. Summ. J. (ECF No. 21) Ex. A ("Boakye Aff."), Ex. B ("White Aff.")); and, (2) Baldwin's medical chart (ECF No. 21-3 ("Medical Chart")). In support of their Motion for Summary Judgment, as relevant here, Defendants Badgett, Harvey, and Stephens submit: (1) the affidavit of B. Badgett, Head Nurse at DCC (Mem. Supp. Mot. Summ. J. (ECF No. 10) ("Badgett Aff.")); and, (2) the affidavit of T. Harvey, a secretary with the VDOC, Health Services Unit (*id.* ("Harvey Aff.")).

As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Baldwin submitted an unsworn Declaration in Opposition to Defendants Stephens's, Badgett's, and Harvey's Motion for Summary Judgment (ECF No. 12), a document entitled "Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment" (ECF No. 13), and a Declaration in Opposition to Defendants' Motion for Summary Judgment (ECF No. 28). Baldwin's submissions, including his Complaint, fail to constitute admissible evidence because Baldwin failed to swear to the contents of his submissions under penalty of perjury. *See United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004). Thus, Baldwin has failed to proffer "sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motions for Summary Judgment. All permissible inferences are drawn in favor of Baldwin.

## III. UNDISPUTED FACTS WITH RESPECT TO DEFENDANTS BOAKYE AND WHITE

On February 15, 2011, Defendant Boakye, an internal medicine physician at DCC, saw Baldwin[6] for a trigger point injection in his right hip. (Boakye Aff. ¶¶ 1, 3; White Aff. ¶ 2.) Defendant Boakye prescribed Hydrocerin cream for dry ashy skin on Baldwin's legs identified during Baldwin's appointment for chronic care the previous day. (Boakye Aff. ¶¶ 2–3; White Aff. ¶ 2.) Defendant Boakye explains that Xerosis, or dry, rough, cracked or scaly skin, is the most common cause of itching in the winter amongst the elderly. (Boakye Aff. ¶ 3.)

On February 23, 2011, Defendant White, a registered nurse at DCC, examined Baldwin's legs and noted that the rash had scabbed over, with no redness or drainage. (White Aff. ¶¶ 1, 3.) On February 28, 2011, Defendant Boakye saw Baldwin for orthopedic problems and encouraged Baldwin to use the prescribed Hydrocerin cream. (Boakye Aff. ¶ 4.) On March 14, 2011, Defendant Boakye saw Baldwin for a main complaint of back pain. (Id. ¶ 5.) Baldwin also complained of skin itching; Defendant Boakye considered Baldwin to have "winter itch" of a senior citizen. (Id.) Defendant Boakye discontinued the Hydrocerin cream and prescribed AmLactin, a broader spectrum moisturizer, discontinued Doxepin[7] which exhibits both anti-itch and sedating properties, and prescribed Baldwin's preferred regime of Benadryl. (Id.)

Defendant White did not see Baldwin for his skin again until March 25, 2011, when Baldwin complained of "rash and itching all over" and stated that the Benadryl was not working. (White Aff. ¶ 4.) Defendant White told Baldwin that she would put him on the doctor's list. (Id.)

---

[6] Baldwin, was eighty-three years old at the time of filing this action. (ECF No. 1) Ex. 1, at 1.)

[7] "Doxepin is used to treat depression and anxiety." (Boakye Aff. ¶ 5 n.3.)

Defendant Boakye saw Baldwin on March 29, 2011 when Baldwin complained about about his "itchy rash." (Boakye Aff. ¶ 6.) Baldwin had refrained from bathing for two days as he believed the local water contributed to the rash. (*Id.*) Defendant Boakye examined Baldwin's skin, and it "showed very ashy and thin with hyper-pigmented macules and papules."[8] (*Id.* (internal footnotes omitted).) Defendant Boakye considered it prudent, in light of the communal environment, to exclude scabies[9] as a possible cause and made arrangements for an overnight treatment for scabies. (*Id.*)[10] During this appointment, Defendant Boakye also considered other possible causes of general itching and requested appropriate blood work. (*Id.*) Defendant Boakye noted an entry in Baldwin's medical chart "for as needed referral to a dermatologist if a primary care level of care for scabies [was] excluded." (*Id.*)[11] Defendant Boakye explained that the note documented his thought process, but was not an order. (*Id.*)

On April 1, 2011, Baldwin was brought to the infirmary for scabies testing. (White Aff. ¶ 6.) Baldwin refused to be treated. (*Id.*)[12]

---

[8] Macules are small flat circumscribed changes in the color of skin. Papules are small solid rounded bumps rising from skin less usually less than 1cm in diameter. (Boakye Aff. ¶ 6 n.5 & n.6.)

[9] Scabies or "seven-year itch" is a contagious, easily spread, skin infection caused by a small species of mite. (Boakye Aff. ¶ 6 n.7.)

[10] Lack of response to the treatment would then exclude scabies as the underlying cause of Baldwin's rash. (Boakye Aff. ¶ 6)

[11] Baldwin alleged that on March 30, 2011, "Dr. Boakye ordered that plaintiff be referred to dermatology." (Compl. ¶ 22.)

[12] Baldwin contends that he "was ordered to infirmary and told that as a condition for referral to a dermatologist [he] must apply a cream . . . [and] remain covered with cream for 14 hours." (Compl. ¶ 23.) Baldwin refused and later learned the test was for scabies. (*Id.*) Baldwin states that on April 25, 2011, he agreed to the test and the combination of two hot showers and emollient cream "were not only devastating, they were torturous, causing excruciating pain." (*Id.* ¶¶ 25–27.)

On May 2, 2011, Defendant Boakye saw Baldwin for seizure and chronic care and also addressed Baldwin's skin problems. (Boakye Aff. ¶ 7.) Defendant Boakye added the moisturizing agent, Vitamin A & D ointment, to Baldwin's medication list, suggested that Baldwin's detergent be changed, and reintroduced Doxepin for its anti-itching properties, its anti-anxiety effects, and sedating effects to enhance Baldwin's sleep. (*Id.*) Defendant Boakye ordered a referral to dermatology.[13] (*Id.*) Defendant Boakye explained that his orders for outside consults must be approved by the utilization management physician in Richmond, over whom Defendant Boakye has no control. (*Id.*) Defendant White was not present at this appointment and had no involvement in implementing Defendant Boakye's orders. (White Aff. ¶ 7.)

On May 17, 2011, Baldwin refused a sick call with the doctor and Defendant White noted this on Baldwin's medical chart. (White Aff. ¶ 8.) On May 31, June 27, July 5, and July 14, 2011, Defendant Boakye reviewed Baldwin's chart and made changes to his medications. (Boakye Aff. ¶¶ 8–9; White Aff. ¶¶ 9–11.)

On July 14, 2011, Defendant Boakye saw Baldwin for medication management because two prescriptions had lapsed for medications used to treat moderate to severe pain, seizures, and neuropathic pain. (Boakye Aff. ¶ 10 & nn.10–11) At that time, Baldwin stated that he was happy with the prescriptions Tramadol/Neurontin[14] and refused to go to his orthopedic appointment at MCV. (*Id.*)

---

[13] Baldwin alleges that "[n]either of these orders were communicated to the appropriate personnel by Defendant Bonnie Badgett, whose responsibility it was." (Compl. ¶ 28.)

[14] Tramadol is a narcotic-like pain reliever used to treat moderate to severe pain. (Boakye Aff. ¶ 10 n.10.) Neurontin is a drug used to treat seizures, neuropathic pain, and hot flashes. (*Id.* ¶ 10 n.12.)

On August 15, 2011, Nurse Hicks noted in Baldwin's medical chart that Baldwin complained that he had not yet had his dermatologist appointment. (White Aff. ¶ 13.) Nurse Hicks reviewed the appointment book, found no appointment had been made, and notified Defendant White. (*Id.*) Defendant White reviewed Baldwin's medical chart and submitted a QMC request to Richmond for the dermatology referral. (*Id.*) Prior to this date, Defendant White "was not aware of Defendant Boakye's prior order regarding a referral." (*Id.*)

On September 12, 2011, Defendant White noted Baldwin's request for renewal of his medication. (White Aff. ¶ 14.) On October 7, 2011, Defendant White received Baldwin's informal complaint that Baldwin wanted to see a dermatologist. (White Aff. ¶ 15.) Defendant White placed Baldwin on the list to see the doctor. (*Id.*)

On October 27, 2011, Defendant Boakye examined Baldwin and observed "a new skin finding at the back of [his] right thigh." (Boakye Aff. ¶ 11.) Defendant Boakye's findings were: "[D]ry, discrete hyperpigmented macules on body with nodules. Eruptions were fairly well generalized with scattered telangiectactic[15] lesions on [his] torso. An isolated narrow based pearly nodule with a central blotch was found on the back of the right thigh." (*Id.* (footnote number altered).) Defendant Boakye's "clinical impression was Actinic dermatoses with Xerosis" and that the isolated nodule was Keratoacantroma.[16] (*Id.*) Defendant Boakye noted that he had received approval for Baldwin's dermatology consult. (*Id.*)

On November 30, 2011, Baldwin saw a dermatologist. (Boakye Aff. ¶ 12.) On December 15, 2011, Defendant White answered Baldwin's informal complaint regarding his rash

---

[15] "[T]elangiectatic nevus is characterized by flat, deep-pink localized areas of capillary dilation that occur predominantly on the back." (Boakye Aff. ¶ 11 n.13.)

[16] "Keratoacanthoma (KA) is a common low-grade (unlikely to metastasize or invade) skin tumor believed to originate from the neck of the hair follicle." (Boakye Aff. ¶ 11 n.14.)

and the dermatologist. (White Aff. ¶ 19.) On December 18, 2011, Defendant Boakye entered the dermatology care plan recommended by the dermatologist. (Boakye Aff. ¶ 12.)

On January 4, 2012, Baldwin saw a dermatologist again. (Boakye Aff. ¶ 13.) Defendant Boakye entered the dermatology care plan recommended by the dermatologist on January 9, 2012. (*Id.*)

On February 9, 2012, Defendant White received a complaint from other inmates that Baldwin was refusing to bathe. (White Aff. ¶ 22.) Baldwin complained about being forced to take hot showers. (*Id.* ¶ 25.) Defendant White informed security that "Baldwin was to avoid excessive heat." (*Id.*) Security informed Defendant White that the "shower temperature [was] not hot." (*Id.*) Defendant White "independently felt the water temperature which in [her] opinion was barely warm." (*Id.*) Defendant White swears: "I do not have control over the enforcement of the facility's grooming policy which requires that inmates bathe three times a week." (*Id.* (spelling and punctuation corrected).) Defendant Boakye confirmed that other than communicating the specialist's recommendation that Baldwin was to avoid excessive heat, the medical staff has no control over the temperature of the water in the showers in general population or the required amount of showers. (Boakye Aff. ¶ 25.)

On February 23, 2012, Defendant Boakye examined Baldwin for follow up with Baldwin's itching. (Boakye Aff. ¶ 14 & n.15.) Baldwin expressed concerns about the quantity of his topical medications. (*Id.* ¶ 14.) Defendant Boakye discouraged frequent use of his Betamethasone[17] because frequent use of steroid creams would lead to further thinning of

---

[17] Betamethasone is a potent glucocorticoid steroid with anti-inflammatory and immunosuppressive properties. (Boakye Aff. ¶ 14 n.16.)

9

Baldwin's skin and easy bruising. (*Id.*) Defendant Boakye ordered a greater quantity of moisturizer and a "separate Sarna[18] lotion – a metholate camphos anti-itch lotion." (*Id.*)

Defendant White had no direct involvement in Baldwin's care after February 23, 2012. (White Aff. ¶ 24.)[19]

Defendant Boakye notes that "Baldwin's skin condition is yet to be 'cured' despite 3–4 visits to the specialist because the underlying pathology is multifactorial." (Boakye Aff. ¶ 23.) He notes that: "Ideally, lifestyle modifications play a big part in managing itching illness. Unfortunately, security concerns mitigate against enforcement." (*Id.* ¶ 24.) Defendant Boakye notes that the nursing staff prudently effected Baldwin's transfer to an "assisted living" section of DCC, which gives more control to the medical department over the patient's environment. (*Id.* ¶ 24.)

### IV. UNDISPUTED FACTS WITH RESPECT TO DEFENDANTS BADGETT AND HARVEY

On May 2, 2011, Defendant Boakye ordered a referral to a dermatologist. (Badgett Aff. ¶ 4.) Defendant Boakye also ordered that Baldwin's clothes, linens, and towels be washed with liquid detergent. (*Id.*) Medical staff removed the order from the record to be routed to the appropriate parties for processing. (*Id.*) Defendant Badgett, Head Nurse at DCC, has no direct involvement with the processing of medical orders that are placed in an inmate's medical records. (*Id.* ¶¶ 1, 4.)

---

[18] Sarna is a steroid-free anti-itch lotion safe for everyday use. (Boakye Aff. ¶ 14 n.17.)

[19] Baldwin alleges that on March 8, 2012, Defendant White and C.O. Bradley, the unit manager, called him to White's office. (Compl. ¶ 36.) C.O. Bradley asked Baldwin when he had last showered. (*Id.*) Baldwin states that he "had taken no showers since it was proscribed by [the dermatologist]." (*Id.*) C.O. Bradley then explained that despite any purported orders or pain, the "prison manual dictates plaintiff must shower three times a week." (*Id.*) Baldwin contends Nurse White "did not intervene." (*Id.*)

10

Defendant Harvey is a secretary with the VDOC, Health Services Unit, and explains that she relies on the professional expertise of medical personnel to adequately perform the medical needs of inmates. (Harvey Aff. ¶¶ 1, 4.) Defendant Harvey swears she does not recall speaking with Baldwin's family regarding his skin condition. (*Id.*) When an inmate's family contacts her office, she directs them to contact the appropriate personnel at the institutions regarding their concerns. (*Id.*)

## V. ANALYSIS

To survive a motion for summary judgment on an Eighth Amendment claim, Baldwin must demonstrate that the Defendants acted with deliberate indifference to his serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). A medical need is "serious" if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both

11

be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm . . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that, "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

### A. Defendants Badgett, Stephens, and Harvey

In order to survive summary judgment for a claim under 42 U.S.C. § 1983, a plaintiff must "'affirmatively show[ ] that the official charged acted personally in the deprivation of the plaintiff's rights.'" *Id.* at 850 (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Furthermore, "[t]he doctrine of *respondeat superior* has no application" under § 1983. *Id.* (citing *Vinnedge*, 550 F.2d at 928). Baldwin must demonstrate that each defendant had "personal

knowledge of and involvement" in the alleged constitutional deprivation to establish liability under § 1983. *Id.* at 850.

### 1. Defendant Stephens

Baldwin merely mentions Defendant Stephens in Claim One and claims that Defendant Stephens caused Baldwin's painful condition by denying timely access to a specialist. Baldwin fails to direct the Court to any evidence demonstrating that Defendant Stephens personally participated in the deprivation of Baldwin's Eighth Amendment rights. *See id.* Accordingly, Claim One against Defendant Stephens will be DISMISSED.

### 2. Defendant Badgett

Baldwin alleges that Defendant Badgett failed to carry out Defendant Boakye's orders that Baldwin be referred to a dermatologist and that Baldwin's clothes, linens, and towels be washed with liquid detergent (Claim Two), prescribed him ineffective medicines (Claim Three), and failed to follow directives of the dermatologist (Claim Five). Defendant Badgett swears that she has no direct involvement with the processing of medical orders that are placed in inmate's medical records. (Badgett Aff. ¶ 4.)

First, Baldwin states no claim against Defendant Badgett based on her supervisory role. *Vinnedge,* 550 F.2d at 928. Second, Baldwin directs the Court to no evidence that refutes Defendant Badgett's statement that she has no personal involvement in processing medical orders. Furthermore, Baldwin fails to direct the Court to any evidence that demonstrates Defendant Badgett's personal involvement with his medical care, much less any deliberate indifference on her part. *See Wright,* 766 F.2d at 850. Accordingly, Claims Two, Three, and Five against Defendant Badgett will be DISMISSED.

### 3. Defendant Harvey

Baldwin alleges that on March 25, 2011 his "son called Defendant Harvey who referred him to Nurse White, who assured him [Baldwin] would be seen by a specialist immediately." (Compl. ¶ 20.) Defendant Harvey avers that she is a secretary, provides no medical advice, and relies on the professional expertise of medical personnel to adequately address the medical needs of inmates. (Harvey Aff. ¶ 4.) Defendant Harvey has no recollection of speaking with Baldwin's family regarding his skin condition, but explains that she refers family members to directly contact the appropriate personnel at the institutions regarding their concerns. (*Id.*)

Baldwin puts forth no evidence that Defendant Harvey had any involvement with the approval process for specialist referrals, much less any facet of his medical care. At most, Defendant Harvey heard the concerns of Baldwin's family and referred them to those individuals charged with Baldwin's medical care. "'If a prisoner is under the care of medical experts . . . , a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands.'" *Iko*, 535 F.3d at 242 (omission in original) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). Thus, Baldwin fails to demonstrate Defendant Harvey acted with deliberate indifference to Baldwin's medical needs. Claim One against Harvey will be DISMISSED.

### B. Defendant Boakye

In Claims One and Two, Baldwin faults Defendant Boakye for failing to refer Baldwin to a dermatologist "in a timely manner" (Compl. ¶ 38) and for "prescribing ineffective medications." (Compl. ¶ 40). At the core of both claims, Baldwin simply disagrees with the medical judgment of Defendant Boakye concerning the appropriate treatment plan for Baldwin's skin condition. "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright*,

766 F.2d at 849 (citing *Gittlemacker*, 428 F.2d at 6). As explained below, Baldwin fails to demonstrate any exceptional circumstances that would necessitate judicial review of Defendant Boakye's clinical judgment.

### 1. Ineffective Treatment

Despite Baldwin's allegations, the evidence established that Defendant Boakye acted with no deliberate indifference. Instead, the record demonstrates Defendant Boakye's responsiveness to Baldwin's complaints. Defendant Boakye opines that in his medical judgment, "Baldwin's persistent itching is multi-factorial in basis – environmental; psychogenic; and chronological age with its associated changes in skin moisture retention capacity and thinning of the skin. Neurodermatitis is not a diagnosis but rather reflects skin changes as a result of repeated rubbing and scrubbing." (Boakye Aff. ¶ 15.) Based upon Defendant Boakye's examination, Baldwin's itchy skin "was consistent with senile pruritis which is multifactorial in basis but mostly importantly has dry skin as an important underlying issue." (*Id.* ¶ 16.) In Defendant Boakye's medical judgment, the "acceptable mode of treatment is by symptomatic relief with aggressive moisturization and use of topical anesthetics as provided in Amlactin cream which apart from its moisturizing ingredients also has pramoxine, a topical anesthetic." (*Id.* ¶ 17.) Defendant Boakye also provided pain medications and Doxepin for its anti-itching properties as well as sedating and antidepressant effects to assist in ameliorating Baldwin's symptoms. (*Id.*)

In Defendant Boakye's medical judgment, "the skin features of Baldwin's condition, that developed later . . . is a result of the physical acts of scratching the body." (*Id.* ¶ 19.)[20]

---

[20] Baldwin admits that other inmates complained that Baldwin "was constantly scratching" with his hands down in his pants, resulting in bloody clothing and bed linens. (Compl. ¶ 32; *See* Decl. Opp'n Summ. J. (ECF No. 28) 2.)

The record clearly demonstrates that Defendant Boakye examined Baldwin many times for his skin condition. When Baldwin complained that a certain medication was not working, Defendant Boakye altered Baldwin's medication list to try a different or supplemental course of treatment. Defendant Boakye subsequently referred Baldwin to a specialist who affirmed Defendant Boakye's course of treatment.[21] Defendant Boakye then followed the dermatologist's plan for Baldwin. (Boakye Aff. ¶¶ 12–13.) Baldwin fails to demonstrate any deliberate indifference by Defendant Boakye toward Baldwin's skin condition.

Baldwin also attacks Defendant Boakye's decision to order scabies treatment and contends that Defendant Boakye knew that Baldwin showed no signs of scabies. (Compl. ¶ 39.) Defendant Boakye explained that he considered it prudent, in light of the communal environment, to exclude scabies as a possible cause and made arrangements for overnight treatment for scabies. (Boakye Aff. ¶ 6.) Baldwin offers no admissible evidence to support his claim that he exhibited no signs of scabies or that exceptional circumstances warrant review of Defendant Boakye's medical judgment. *See Wright*, 766 F.2d at 849 (citing *Gittlemacker*, 428 F.2d at 6).

Claim Two will be DISMISSED against Defendant Boakye.

### 2. Delay in Specialist Referral

Baldwin also faults Defendant Boakye for delaying Baldwin's referral to a dermatologist. Baldwin claims that he asked to see a dermatologist on February 23, 2011 (Compl. ¶ 17), but

---

[21] The dermatologist approved of Defendant Boakye's course of treatment, and continued "the basic tenet of our management but for the addition of a steroid cream." (Boakye Aff. ¶ 22.) Defendant Boakye explained that it is good practice for a non-specialist to hold off on steroid use, especially if the underlying cause has not been definitely diagnosed "since these immune modulators may destroy the virginity of the lesion and hence make diagnosis more difficult for the specialist." (*Id.*)

16

was not seen by the dermatologist until November 30, 2011 (Compl. ¶ 35). Baldwin alleges the delay caused him "pain and suffering." (Compl. ¶ 38.)

While a significant delay in the treatment of a serious medical condition may, amount to an Eighth Amendment violation, a violation only occurs if the delay results in substantial harm. *See Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir 2008) (citing *Estelle*, 429 U.S. at 104–05). Thus, to defeat summary judgment, Baldwin must establish that the delay in referral to a dermatologist caused him substantial harm. *Id.* at 167. "'[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Shabazz v. Prison Health Servs.*, No. 3:10CV190, 2012 WL 442270, at *5 (E.D. Va. Feb. 9, 2012) (alteration in original) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)). Here, Baldwin puts forth no evidence that the delay in referral itself caused him harm. Instead, the record demonstrates that Baldwin's "itching" originated from dryness, caused by aging and thinning skin and environmental factors, and worsened due to Baldwin's continual scratching and rubbing of the irritated skin. (Boakye Aff. ¶¶ 15–17.) Because Baldwin fails to establish that the delay in referral itself caused him substantial harm, Claim One will be DISMISSED against Defendant Boakye.

### C. Defendant White

Baldwin names Defendant White in all five claims. In Claims One and Two, Baldwin faults Defendant White for deliberate indifference to his medical needs by denying timely access to the dermatologist and "by simply documenting [Baldwin's] worsening conditions while prescribing ineffective medicines." (Compl. ¶ 38.) Baldwin provides no evidence suggesting Defendant White was deliberately indifferent to his medical needs. Baldwin fails to introduce evidence that Defendant White had the authority to order a specialist referral or prescribe

17

medicine. Instead, the record demonstrates that Defendant Boakye prescribed medicines to Baldwin and determined in his medical judgment the appropriate time for a referral to the dermatologist. To the extent that Baldwin faults Defendant White for treating Baldwin pursuant to Defendant Boakye's medical orders, Baldwin states no claim. Defendant White may rely on a doctor's judgment regarding the appropriate course of Baldwin's treatment. *Hogge v. Stephens*, No. 3:09CV582, 2011 WL 2161100, at *12 (E.D. Va. June 1, 2011) (citations omitted).

Moreover, the evidence established that Defendant White acted with no deliberate indifference toward Baldwin's skin condition. Instead, the record demonstrates Defendant White's responsiveness to Baldwin's numerous complaints. Claims One and Two against Defendant White will be DISMISSED.

In Claim Three, Baldwin faults Defendant White for refusing to carry out or implement Defendant Boakye's May 2011 instructions to refer Baldwin to a dermatologist and to wash Baldwin's linens and clothing in liquid detergent. (Compl. ¶¶ 28, 30, 41.) Defendant White avers that she was not present at this appointment and had no involvement in implementing Defendant Boakye's orders. (White Aff. ¶ 7.) Baldwin offers no admissible evidence that Defendant White had any personal involvement in the execution of Defendant Boakye's May 2011 orders. *See Wright*, 766 F.2d at 850. Accordingly, Claim Three against Defendant White will be DISMISSED.

In Claim Four, Baldwin alleges that Defendant White "did nothing to counter the unit manager's insistence that [Baldwin] shower in hot water. It is within the scope of Nurse White's position to counter any instruction contrary to Dr's. orders. Medical trumps administration!" (Compl. ¶ 42.) Baldwin provides no evidence that Defendant White was deliberately indifferent to Baldwin's medical needs. Instead, the record demonstrates that Defendant White responded

to Baldwin's complaints about the water temperature, instructed security that Baldwin was to avoid hot water, independently tested the water, and concluded the water "was barely warm." (White Aff. ¶ 25.) Baldwin puts forth no admissible evidence to counter Defendant White's sworn testimony. Baldwin fails to demonstrate that Defendant White perceived of and disregarded a substantial risk of harm from the required showers. *Parrish*, 372 F.3d at 303 (citation omitted). Claim Four will be DISMISSED.

In Claim Five, Baldwin claims "[s]ubsequent to the original filing of this complaint" on March 19, 2012, Defendant White "made no effort to carry out the specific orders and to provide [and appropriately administer] the specific prescriptions of the dermatologist." (Compl. ¶ 44). Baldwin alleges "prescribed drugs have been supplanted with ineffectual substitutes and have been administered only sporadically and often withheld altogether." (*Id.*) Defendant White avers that she had no direct involvement in Baldwin's care after February 23, 2012. (White Aff. ¶ 24.) Baldwin provides no evidence to counter Defendant White's sworn testimony. Thus, Baldwin fails to demonstrate that Defendant White had any personal involvement in executing the dermatologist's orders subsequent to February 23, 2012. *See Wright*, 766 F.2d at 850. Accordingly, Claim Five will be DISMISSED.

## VI. CONCLUSION

Defendants' Motions for Summary Judgment (ECF Nos. 9, 20) will be GRANTED. Baldwin's claims and the action will be DISMISSED.

An appropriate Final Order shall issue.

Date: 7-25-13
Richmond, Virginia

/s/
James R. Spencer
United States District Judge